# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

---

UNITED STATES OF AMERICA,

     Plaintiff,

vs.                                      1:20-cr-01228-KWR

JESSE BARELA,

     Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Motion to Dismiss, filed September 30, 2021 (**Doc. 116**).  Defendant has moved this Court to dismiss his indictment on the grounds that post-indictment delays have violated his constitutional and statutory rights.  Having reviewed the pleadings and the relevant law, the Court finds that Defendant's motion is not well-taken and, therefore, is **DENIED WITHOUT PREJUDICE**.

## BACKGROUND

This case stems from the United States one-year-long delay in bringing Jesse Barela (herein "Defendant") to trial in federal court.[1]  Defendant is charged with interference with interstate commerce by violence and aiding and abetting, in violation of 18 U.S.C. §§ 1951(a) and 2.  On November 26, 2019, two men allegedly used weapons to rob an Albertson's grocery store in Albuquerque, New Mexico.  On December 7, 2019, Defendant was arrested on state charges for his alleged involvement in the robbery.  Defendant was incarcerated and awaiting trial in state court when the following events took place.

---

[1] The Court is not making factual findings related to Defendant's conduct on the underlying charge in this Memorandum Opinion and Order.

On March 24, 2020, Defendant's brother, the co-defendant in this case, was arrested on state charges for allegedly robbing a Quick Track store in Albuquerque, NM.  While investigating the Quick Track robbery, the Albuquerque Police Department identified Defendant's brother as a suspect in the earlier Albertson's grocery store robbery, and on July 23, 2020, Defendant's brother was charged in state court on suspicion of that robbery.

In July 2020, the United States Attorney's Office learned of the Albertson's grocery store robbery, and on September 10, 2020, the Government obtained a federal indictment charging Defendant and his brother for the same events upon which Defendant was already arrested and charged in state court.  As a result, on September 24, 2020, the Second Judicial District Attorney of Bernalillo County, New Mexico filed a *nolle prosequi* to terminate the state prosecution of Defendant.  Defendant was formally arrested on the federal matter on September 28, 2020 and made his first appearance before a magistrate judge on September 29, 2020.  At this appearance, Defendant was ordered detained into the custody of the United States Marshals Service.  On October 20, 2020, the Court set trial for December 14, 2020.

In light of Administrative Orders in the District of New Mexico suspending civil and criminal jury trials because of the health and public safety risks posed by the coronavirus (COVID-19) pandemic, on November 30, 2020, the Court vacated the December 14, 2020 trial setting after finding the ends of justice served by granting a continuance.  *See* **Doc. 52**.  The Court filed two additional *sua sponte* orders continuing the trial based on the health and safety risks posed by the pandemic.  *See* **Doc. 53**; **Doc. 55**.  The last order continued the trial to March 8, 2021.

On March 1, 2021, counsel for Defendant's brother, joined by Defendant and counsel for Defendant, Mr. Bowles, filed a motion to continue the trial in order to "review and evaluate the evidence" and discovery.  *See* **Doc. 56**.  In response to this motion, Defendant filed a *pro se* motion

asserting his right to speedy trial and requesting new counsel. *See* **Doc. 58**. Defendant implied that the motion to continue had been filed without his consent. *See* **Doc. 138, at 4**. Mr. Bowles filed a response to the *pro se* motion stating that "communications between [Defendant] and counsel have broken down" and Defendant would be best served with counsel of his choice. *See* **Doc. 116, at 6**.

On March 17, 2020, Judge Fashing held a hearing on Defendant's *pro se* motion. Defendant stated that he wished to hire an attorney to replace his counsel, and Judge Fashing concluded that Defendant's motion to substitute counsel would be granted once Defendant hired an alternate attorney. *See* **Doc. 62**. On May 19, 2021, Mr. Bowles filed a motion to withdraw and stated that communication with Defendant remained strained. *See* **Doc. 65**. On May 25, 2021, Judge Ritter held a hearing on counsel's motion to withdraw. At the hearing, Judge Ritter informed Defendant that if Defendant did not hire new counsel by June 8, 2021, the Court would appoint one. *See* **Doc. 69**. By June 8, Defendant had not hired new counsel. On June 16, 2021, the Government filed notice that Defendant had not hired counsel, *see* **Doc. 73**, and on June 17, 2020, the Court appointed new counsel for Defendant, Mr. Alarid. *See* **Doc. 74**.

By this time, trial was scheduled to begin on July 12, 2021. On July 8, 2021, during a Call of the Calendar, the parties represented that the case was not ready for trial. Defendant was present with an attorney, Ms. Cordova, appearing on behalf of Mr. Alarid. Ms. Cordova indicated that defense counsel would request a continuance because Mr. Alarid only received discovery the previous week and would not be ready for trial. Later, Mr. Alarid filed a motion to continue in which he informed the Court that Defendant objected to the motion, had not authorized defense counsel to file any motions and was refusing to communicate with counsel, and that Defendant wished to invoke his right to speedy trial. *See* **Doc. 82**. The Court granted Mr. Alarid's motion to

continue and trial was set for October 12, 2021.  On July 13, 2021, Defendant requested new counsel because of his personal conflicts with Mr. Alarid.  *See* **Doc. 84**.  On July 15, 2021, the Court appointed new counsel for Defendant, Mr. Pori.

On September 23, 2021, defense counsel advised the United States of possible speedy trial issue.  *See* **Doc. 93**.  In this pleading, counsel filed a motion requesting that the Court vacate and continue the deadlines for filing pretrial motions so that counsel may have additional time to draft meritorious pretrial motions, including a motion to dismiss based on a violation of Defendant's right to speedy trial.  Defendant then filed the present motion on September 30, 2021, urging the Court to dismiss the indictment against him for two reasons: (1) the Government has violated his Sixth Amendment Right to Speedy Trial because of the 22-month trial delay since his state court charges, and (2) the Government has violated the Speedy Trial Act because 72 non-excludable days have passed since his initial appearance.  *See* **Doc. 116**.  The Government responded on October 14, 2021 (**Doc. 138**), and Defendant replied on October 22, 2021 (**Doc. 142**).  Trial in this matter is set for November 29, 2021.

## DISCUSSION

Defendant makes a number of assertions to support his requested relief of dismissal of the indictment with prejudice. As discussed below, the Court does not find a violation of any of Defendant's constitutional rights nor does the Court find a violation of the Speedy Trial Act.

## I.   <u>Sixth Amendment: Speedy Trial Guarantee.</u>

Among its guarantees, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  "Although the right is somewhat amorphous, the remedy is severe: dismissal of the indictment."  *United States*

*v. Margheim*, 770 F.3d 1312, 1325 (10th Cir. 2014) (quoting *United States v. Seltzer*, 595 F.3d 1170, 1175 (10th Cir. 2010)).

A court must analyze a four-factor framework to determine whether a delay has caused a defendant to be deprived of his right to a speedy trial. *See Barker v. Wingo*, 407 U.S. 514, 530–32 (1972). The Court must weigh the following factors: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *Margheim*, 770 F.3d at 1325–26 (quoting *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006)). The first factor "functions as a triggering mechanism, and the remaining three factors need only be assessed if the delay is long enough to be presumptively prejudicial." *Id.* at 1326 (internal citations and quotations omitted).

### A. The Length of Delay is Presumptively Prejudicial.

The constitutional right to a speedy trial "attaches when the defendant is arrested or indicted, whichever comes first." *United States v. Black*, 830 F.3d 1099, 1112 (10th Cir. 2016) (citations omitted). "Arrest" means federal arrest. *See United States v. Allen*, 986 F.2d 1354, 1356 (10th Cir. 1993); *United States v. Banks*, 761 F.3d 1163, 1181 (10th Cir. 2014) ("A defendant's constitutional speedy-trial right attaches when he is arrested or indicted on federal charges, whichever come[s] first."). Thus, the Sixth Amendment right to speedy trial attaches at the point of federal criminal charges and is "not triggered by prior state arrest or indictment." *Allen*, 986 F.2d at 1356; *see also United States v. Primm*, 1996 WL 316462, at *2 n.1 (10th Cir. 1996) (rejecting the argument that Sixth Amendment protection was triggered by defendant's initial arrest for state charges where there was a delay of more than twenty-eight months between the state arrest and subsequent federal indictment).

To trigger a speedy trial analysis, "an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Seltzer*, 595 F.3d at 1176 (quoting *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)). Generally, the length of delay crosses the threshold from ordinary to presumptively prejudicial when it exceeds a year. *Id.* If Defendant makes a showing of presumptive prejudice, then the Court must consider "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *See Doggett*, 505 U.S. at 652. "The longer the delay, the more likely it is that the first factor will weigh in the defendant's favor." *United States v. Larson*, 627 F.3d 1198, 1208 (10th Cir. 2010). In making this assessment, the Court "should take into consideration the nature of the charges." *Id.* (quoting *Barker*, 407 U.S. at 531).

Here, Defendant argues that the 22-month delay between the initiation of state prosecution in his case and the instant motion to dismiss is presumptively prejudicial. *See* **Doc. 116, at 14–15**. The Government concedes that the length of delay is presumptively prejudicial but argues that the delay in question is 13 months, from September 10, 2020, when Defendant was indicted in federal court, to the date of the Government's response in opposition to Defendant's motion to dismiss filed on October 14, 2021. *See* **Doc. 138, at 16–17**.

Here, Defendant's Sixth Amendment right to speedy trial is "**not triggered by prior state arrest or indictment**." *Allen*, 986 F.2d at 1356 (emphasis added). A federal grand jury returned an indictment on Defendant's underlying charges on September 10, 2020. Defendant was arrested for federal crimes in this case on September 28, 2020. The trigger period for the Sixth Amendment analysis begins with Defendant's federal indictment on September 10, 2020, the earlier of the two dates. Defendant's motion to dismiss for statutory and constitutional speedy trial violations was filed on September 30, 2021. *See* **Doc. 116**. Thus, at the time when Defendant requested relief in

the form of dismissal, more than one year had passed since Defendant's federal indictment, and the Court finds that this length of delay crosses the threshold from ordinary to presumptively prejudicial.

However, the Government argues that because the "delay technically crosses the 'presumptively prejudicial' line [] only by a single month," this factor weighs in favor of the Government. *See* **Doc. 138, at 16**. The Court disagrees. Although the delay stretches only about one month beyond the minimum needed to trigger the Court's review, "[g]iven the uncomplicated nature" of the charges at issue, the Court finds that this factor weighs in favor of Defendant. *See United States v. Nixon*, 919 F.3d 1265, 1270 (10th Cir. 2019) (finding a 15 month delay for a felon-in-possession charge sufficient to find in favor of the defendant on the delay factor); *see also United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) ("[L]ess delay is tolerated for ordinary street crimes, and more delay for complex conspiracy charges…The government should not have needed over seventeen months to prepare a case against Mr. Batie for armed bank robbery and brandishing a firearm.").

### B. The Government Has Presented Acceptable Reasons for the Delay.

The second factor, the reason for delay, requires the court to "assess the reasons offered by the government for not bringing the defendant to trial in a timely fashion." *Margheim*, 770 F.3d at 1326. The Government has the burden to "present acceptable reasons for the delay." *Id.* Then, the Court must determine whether the Government's delay was willful, such as an attempt to stall the defense, or the result of a "neutral reason," such as negligence by the prosecution due to heavy caseloads. *Id.* Deliberate or willful conduct weighs heavily against the prosecution, while a "neutral reason" weighs less heavily against the government. *See Barker*, 407 U.S. at 531; *United States v. Vaughan*, 643 F. App'x 726, 730 (10th Cir. 2016) ("[C]ourts have held that the reason-

for-delay factor weighs against the government when it cannot explain its failure to arrest or notify the defendant of an indictment."). However, "[d]elays attributable to the defendant do not weigh against the government." *United States v. Hicks*, 779 F.3d 1163, 1168 (10th Cir. 2015) (finding defendant responsible for delays where he filed more than forty unique motions, including several requesting that the district court extend filing deadlines or continue hearings and changed counsel several times during the course of the proceedings).

### 1. The Time Period from December 7, 2019 to September 9, 2020.

First, the Government argues that the delay from December 7, 2019 to September 9, 2020 corresponds to the time Defendant spent in state custody, and therefore, does not factor into the Sixth Amendment speedy trial analysis. *See* **Doc. 138, at 18**. Still, the Government asserts that even if this time period was considered, such a delay was appropriate because the Government did not learn of Defendant's case until July 2020. *Id.* The Court agrees.

Here, the appropriate period of measure begins with Defendant's federal indictment on September 10, 2020. *See United States v. Marion*, 404 U.S. 307, 313 (1971) ("In our view, however, the Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused,' an event that occurred in this case only when the appellees were indicted on April 21, 1970."). Defendant's time in state custody **prior** to the institution of any federal proceedings against him is not material where Defendant asserts a Sixth Amendment speedy trial violation. *Id.*; *cf. Marion*, 404 U.S. at 324 ("[T]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to [defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused.").

Nevertheless, even if the Court were to consider the period prior to the institution of federal proceedings against Defendant, the Court finds that the Government has provided acceptable reasons for the delay. Both parties appear to agree that the United States did not learn of Defendant's state case until July 2020. *See* **Doc. 138, at 18**; **Doc. 116, at 3–4, 15–16**. The Government asserts that once it learned of the case, it "had to evaluate whether it would be a good use of federal resources to prosecute him given that the state of New Mexico was already doing so, how strong the evidence against Mr. Barela was, and the many other factors that the United States must carefully consider before initiating criminal proceedings against a person." *See* **Doc. 138, at 18–19**. Therefore, the Court concludes that even if this period was considered, the Government has provided neutral or appropriate reasons for the nearly two-month delay between when the Government first learned of Defendant's case to the time of his subsequent federal indictment.

Defendant's arguments to the contrary are unavailing. Defendant argues that the Government "must make a particularized showing of why the circumstances require the conclusion of the state proceedings before the federal proceedings can continue." *See* **Doc. 142, at 10** (quoting *Seltzer*, 595 F.3d at 1178). However, as Defendant readily admits, the Government was not awaiting the conclusion of the state proceedings or deferring its federal prosecution, rather, the Government was unaware of Defendant's case in the first instance. The chief reason provided by the Government for the two-month delay from July 2020 to Defendant's indictment on September 10, 2020 was to investigate the facts of the case, and the Court cannot find any evidence in the record that contradicts the Government's justification.

**2.   The Time Period from September 10, 2020 to February 28, 2021.**

The Government alleges that from September 10, 2020 to February 28, 2021, any delays during this period were the result of Chief Judge Johnson's Administrative Orders suspending jury trials during the coronavirus pandemic.  *See* **Doc. 138, at 19–20**.  The Government argues that as a result of these Administrative Orders, "during this half-year period, the Court could *not* have held a trial for Mr. Barela even if it, the government, or Mr. Barela himself had wanted to."  *Id.* **at 20** (emphasis in original).  The Court agrees.

Here, the Court finds that any delay caused by the COVID-19 pandemic is an exigent circumstance that cannot be weighed against the Government.  The District of New Mexico entered Administrative Orders suspending jury trials beginning March 16, 2020 through February 28, 2021.  *See, e.g.*, 20-MC-00004-08; 21-MC-00004-04.  Courts nationwide have also acknowledged the necessity to continue jury trials in light of the unprecedented COVID-19 pandemic.  *See, e.g.*, *United States v. Woolard*, No. CR18-217RSM, 2020 WL 6528865, at *2 (W.D. Wash. Nov. 5, 2020) ("In any event, the arrival of the COVID-19 pandemic would have made any jury trial impossible from March to the present day, for the reasons stated above and in the Court's General Orders on the subject"); *United States v. Tapp*, No. CR 19-35, 2020 WL 6483141, at *2 (E.D. La. Nov. 4, 2020) ("[T]he safety of witnesses, court personnel, jurors and the parties in the midst of a global pandemic justified the continuance of jury trials.").

This Court acknowledged the "reduced ability to obtain an adequate spectrum of jurors and the effect of the public health recommendations on the availability of counsel and Court staff to be present in the courtroom" when it continued Defendant's trial from its original setting of December 14, 2020 to March 8, 2021.  *See* **Doc. 52, at 1** (vacating December 14, 2020 trial and resetting trial for January 11, 2021); **Doc. 53, at 1** (vacating January 11, 2021 trial and resetting

trial for February 16, 2021); **Doc. 55, at 1** (vacating February 16, 2021 trial and resetting trial for March 8, 2021). Therefore, the Government has presented a neutral reason for any delay during this time period.

Defendant maintains that the "reasons for the delay in this case are almost exclusively attributable to the Government." *See* **Doc. 116, at 15**. Although the majority of Defendant's claims focus on delays prior to Defendant's grand jury indictment, during this particular period, Defendant argues that there was an unreasonable four or five-day delay "between the dismissal of the state case and Mr. Barela's arrest by the U.S. Marshal[s]." *See* **Doc. 116, at 16**; **Doc. 142, at 9, 11**. The Government asserts that the delay in question was reasonable where the "mere 4 days [] included a Saturday and Sunday." *See* **Doc. 138, at 13**. Defendant retorts that the Government's transfer should have been almost immediate because "cases [] are tried across the street from each other in U.S. District Court and the New Mexico Second Judicial District Court [and] it is readily known that the Marshals can pick up defendants on the same day the detainer is lodged." *See* **Doc. 142, at 11**.

Here, the State of New Mexico terminated its prosecution of Defendant on September 24, 2020. *See* **Doc. 116, at 4**. Defendant was then arrested on federal charges on September 28, 2020. *Id.* The New Mexico state detention facility where Defendant was in custody informed the United States that Defendant was "ready for pick-up" on Friday, September 25, 2020 at 4:48 PM. *See* **Doc. 138, Ex. 8, at 1**. The United States inquired whether it could pick-up Defendant the following Monday morning. *Id.* The U.S. Marshals Service did in fact arrest Defendant on federal charges the following business day, Monday, September 28, 2020. *See* **Doc. 116, at 4**; **Doc. 138, at 2–3**. Based on the evidence presented, the brief passage of time does not appear to be a deliberate or willful attempt by the Government to delay Defendant's arrest or arraignment in federal court.

Therefore, the Court finds that the Government has provided an acceptable reason for the four-day delay.

### 3. The Time Period After March 1, 2021.

Finally, the Government argues that from March 1, 2021 to the present day, there have been two continuances during this time period, and both of these continuances are attributable to Defendant's conduct. *See* **Doc. 138, at 20**. The Government argues that the first continuance, which moved the trial from March 8 to July 12, 2021, was because of a jointly filed motion by Defendant, through his attorney, and his co-defendant. *Id.* The Government also argues that the second continuance, which moved the trial from July 12 to October 12, 2021, was because Defendant "refused to work with the new counsel (Mr. Alarid) that Judge Ritter had appointed for him to get the case moving." *Id.* **at 21**. Defendant argues that delays from March 8, 2021 to July 12, 2021 were not his doing, but rather, "retained counsel and appointed counsel ignored [his] right to determine the scope of his representation or the objectives of the defense," and Defendant's counsel "in concert with the Assistant United States Attorney, forced a waiver of Mr. Barela's right to a speedy trial." *See* **Doc. 142, at 14**.

The Court finds that the Government has presented an acceptable reason for the first delay in this period. On March 1, 2021, Defendant, through his counsel, Mr. Bowles, joined in his co-defendant's motion to continue the trial. *See* **Doc. 56**. The Government did not join in this motion. The motion to continue asked the Court to vacate the March 8, 2021 trial setting to allow plea negotiations to continue, the review of discovery and evidence, and the evaluation of the case in order to allow the defendants to mount a "complete defense." *Id.* **at 2**. The Court provided findings, granted the continuance, and reset the trial for July 12, 2021. *See* **Doc. 57**.

Here, Defendant now appears to argue that Defendant did not consent to his counsel, Mr. Bowles, joining in the motion to continue filed by his co-defendant, and therefore, this delay should not be attributed to him. *See* **Doc. 116, at 5**. However, the Court finds that the Government argues persuasively that this continuance should be attributed to Defendant. *See* **Doc. 138, at 20–21**. The continuance was granted to allow Defendant and defense counsel time for "obtaining discovery, conducting an investigation into the basis for the charges against [him], and evaluating the discovery that has been provided to date," and where additional time was necessary to allow counsel for Defendant to review the evidence. *See* **Doc. 56, at 1–2**.

Although Defendant made the Court aware of his disagreement or objection to the continuance after-the-fact, Defendant was not prejudiced by the motion. In fact, the delay benefited Defendant because defense counsel needed time to "mount a defense to the charges" against Defendant. *Id.* **at 2**. "Because the attorney is the defendant's agent when acting…in furtherance of the litigation, delay caused by the defendant's counsel is also charged against the defendant." *See Vermont v. Brillon*, 556 U.S. 81, 90–91 (2009) (internal quotations and alterations omitted) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). Defendant has not asserted an ineffective assistance of counsel claim, and therefore, the Court declines to "dwell on the particulars" of Defendant's "personal consent" to the continuance. *See Margheim*, 770 F.3d at 1319 n.3 (internal quotations omitted).

Next, the Court finds that the Government has presented an acceptable reason for the second delay in this period. On July 8, 2021, about one week prior to Defendant's July 12, 2021 trial, the Court held a Call of the Calendar. *See* **Doc. 138-11, Ex. 11**. Ms. Mease for the United States represented that she did not "anticipate that [the case would] be heading to trial on the 12th." *Id.* **at 3**. The record shows that Defendant's counsel, Mr. Alarid, who had recently been appointed

13

to represent him after communication between Defendant and his previous counsel had "broken down," *see* **Doc. 138, at 21**, needed more time to familiarize himself with the case and review discovery, and was intending to file a motion to continue. *See* **Doc. 138-11, Ex. 11, at 3**. Additionally, the United States was still engaged in plea negotiations with the co-defendant in the case, Defendant's brother. *Id.* Although the Government may have also been unprepared to proceed to trial, in this instance, it was Defendant's actions that led to subsequent trial delays. Particularly, Defendant was uncooperative with Mr. Alarid and refused to open correspondence from him or talk to him. *Id.* **at 4;** *see also* **Doc. 138-12, Ex. 12, at 6**. Defendant also expressed a desire to change counsel or hire his own attorney at this hearing held one week before trial. **Doc. 138-11, Ex. 11, at 4**.

"Just as a State's deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the State, so too should a defendant's deliberate attempt to disrupt proceedings be weighted heavily against the defendant." *See Brillon*, 556 U.S. at 93–94 (internal quotations and citations omitted) (quoting *Barker*, 407 U.S., at 531). Absent Defendant's "deliberate efforts to force the withdrawal" of his counsel, the need for this continuance may not have arisen. *Id.* at 94 ("Even after the trial court's warning regarding delay, [defendant] Brillon sought dismissal of yet another attorney, Donaldson. The effect of these earlier events should have been factored into the court's analysis of subsequent delay.").

Accordingly, none of the delay between September 10, 2020, the date of the grand jury indictment, and the date of this Order is attributable to the Government. The delays from September 10, 2020 to February 28, 2021 are attributable to a nationwide pandemic outside of the control of the parties or this Court. And delays from March 1, 2021 to the date of this Order are

14

the result of two pretrial motions to continue trial filed by Defendant, as well as Defendant's

uncooperativeness with his counsel.  Therefore, this factor weighs against Defendant.

### C. Defendant Has Asserted His Right to Speedy Trial, but his Conduct Indicates Otherwise.

The third factor assesses whether a defendant asserted his right to speedy trial without

unreasonable delay.  The Court may "assign strong weight to the defendant's assertion of his

constitutional speedy-trial right" and may "weigh the frequency and force of [a defendant's]

objections' to the delay."  *Margheim*, 770 F.3d at 1328.  "A defendant has no duty to bring himself

to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due

process."  *See Barker*, 407 U.S. at 527.  Thus, a defendant does not bear the burden of protecting

this right, particularly if he is uninformed that formal proceedings triggering that right have

commenced against him.  *See Doggett*, 505 U.S. at 653–54 (1992); *see also Vaughan*, 643 Fed.

Appx. at 731.  However, the Court may consider "whether the defendant's behavior during the

course of litigation evinces a desire to go to trial with dispatch."  *Batie*, 433 F.3d at 1291.

The Court finds that Defendant has repeatedly and forcefully asserted his right to speedy

trial.  However, notwithstanding Defendant's request for speedy trial, the Court cannot conclude

that his conduct over the past year evinces a desire to actually have a speedy trial.  In particular,

Defendant's counsel at the time, Mr. Alarid, noted for the record that:

> The Defendants *pro se* filings set forth a series of directives that are contradictory.
> The Defendant states that he does not wish a court-appointed attorney, but has not
> hired a private attorney since filing his motion for withdrawal of previous counsel
> back in March of 2021. The Defendant has declared that he will not speak with his
> attorney, he has refused to even read written communication from his attorney, and
> informed the Court that his attorney is not allowed to file any motions on his behalf.
> He has also invoked his speedy trial rights. This will result in a trial being scheduled
> quickly, without allowing his attorney to properly prepare the case for trial, or
> obtain a continuance for the purpose of proper preparation. This is not in the
> Defendant's best interest and prevents the attorney from ethical representation in
> this matter.

15

*See* **Doc. 82, at 2**.

The Court finds that Defendant's explicit assertions of his right to a speedy trial cannot entirely nullify the significance of delays that Defendant both requested and caused through his unwillingness to engage with multiple counsel, which in turn caused new counsel to be appointed, and further necessitated additional time for counsel's familiarization with Defendant's case, the relevant facts, discovery, witnesses, and evidence to mount an adequate defense.  *See Margheim*, 770 F.3d at 1329 ("While it is apparent that Mr. Margheim was not interested in avoiding trial altogether…it is equally obvious that he was interested in other time-consuming strategies for a significant portion of the delay period. Indeed, had Mr. Margheim focused completely on proceeding to trial, we find it doubtful that he would have severed ties with three attorneys."). Therefore, Defendant's actual conduct and tactical litigation decisions contradict his assertion of his desire to have a speedy trial.  *See United States v. Tranakos*, 911 F.2d 1422, 1429 (10th Cir. 1990) ("We are unimpressed by a defendant who moves for dismissal on speedy trial grounds when his other conduct indicates a contrary desire.").  The Court concludes that this factor weighs against Defendant.

### D.  Defendant Has Not Shown Definite Prejudice.

Under the final *Barker* factor, it is the defendant who bears the burden to demonstrate that his Sixth Amendment right to a speedy trial was prejudiced by the delay.  *See Seltzer*, 595 F.3d at 1179.  Although a delay may be presumptive prejudicial under the first *Barker* factor, the Court "will relieve a defendant of his separate burden to present specific evidence of prejudice…only if there is evidence of an extreme delay." *Black*, 830 F.3d at 1121–22 (internal quotations and citations omitted); *see Seltzer*, 595 F.3d at 1180 n.3 (requiring a delay of six years to constitute extreme delay).  If a defendant cannot show "extreme delay," the defendant must

make a particularized showing of prejudice which addresses the interests the speedy trial right was designed to protect. These interests include (i) the prevention of oppressive pretrial incarceration; (ii) the minimization of anxiety and concern of the accused; and (iii) [the] minimization of the possibility that the defense will be impaired.

*Black*, 830 F.3d at 1122 (internal citations and quotations omitted).

Of these interests, "the most serious is the 'hindrance of the defense' because the inability of a defendant to adequately prepare his case skews the fairness of the entire system." *Seltzer*, 595 F.3d at 1179–80 (quoting *Barker*, 407 U.S. at 532). "A defense is hindered in the sense that the defendant was not able to defend the charges against him to the extent he desired if, for example, as a result of the delay, the defense no longer had access to certain evidence or could no longer use a witness because that witness died before trial." *See Larson*, 627 F.3d at 1209 (internal quotations and alterations omitted) (quoting *United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir.2009)). "That the government may have strengthened its case during the delay does not implicate this interest." *Id.*

Here, the delay in this case is not sufficiently extremely to allow Defendant to rest on a presumption of prejudice. Accordingly, Defendant argues that

> [He] has suffered from the anxiety and heartache that comes with oppressive pre-trial incarceration. While it only recently appears that he may not have lost his alibi witness as he previously feared, he nonetheless has suffered a loss of employment and income, the end of a romantic relationship, the termination of his engagement and the frustration which has come from trying to find an attorney and assert his Sixth Amendment rights, all while confined in a detention center (and deprived of the opportunity to obtain a prompt vaccination) in the middle of a global pandemic.

*See* **Doc. 116, at 18**.

On the first interest, the Court recognizes that Defendant has been subjected to some difficult conditions of pretrial incarceration. He has been detained during the COVID-19 pandemic, has lost contact with some of his loved ones, and has been subjected to lockdowns and other restrictive conditions of confinement. Thus, this factor favors Defendant.

17

As to the second interest, the Court recognizes that Defendant has experienced anxiety and concern because of the delay in his trial date.  However, Defendant must "show some special harm suffered which distinguishes his case."  *See Hicks*, 779 F.3d at 1169 (quoting *United States v. Gould*, 672 F.3d 930, 939 (10th Cir. 2012)).  This harm must be different than "any other arrestee awaiting trial."  *See United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994).  Here, Defendant fails to identify such harm, and therefore, this factor weighs in favor of the Government.

Finally, under the third and most important interest, Defendant has failed to show that the delay has impaired his defense.  Defendant argues that the delay prejudiced Defendant because it "obviously impair[ed] his defense through the **potential loss** of a crucial alibi witness."  *See* **Doc. 142, at 3** (emphasis added).  Defendant asserts that "even if he has not lost his alibi witness[,] the prejudice he has suffered trying to bring his case to trial to prove his innocence has been painful and extreme."  *See* **Doc. 116, at 18**.  However, Defendant has not demonstrated any cognizable hindrance to his defense.  Defendant has failed to "show definite and not speculative prejudice," and in fact, it appears that Defendant has not lost any witnesses nor has Defendant asserted any other hindrance to his defense.  *See Margheim*, 770 F.3d at 1331 (quoting *United States v. Trammell*, 133 F.3d 1343, 1351 (10th Cir.1998)); *see also* **Doc. 116, at 11** (noting that hours before filing the motion to dismiss, defense counsel received a telephone call from the two alibi witnesses that Defendant believed had disappeared).

### E. A Balancing of the Factors Leads to the Conclusion that Defendant's Sixth Amendment Right to Speedy Trial Has Not Been Violated.

The Court's analysis is a balancing test in which none of the singular factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."  *Seltzer*, 595 F.3d at 1181 (citation omitted).  However, "[f]ailure to show prejudice caused by the delay is

nearly fatal to a speedy trial claim." *Hicks*, 779 F.3d at1168 (10th Cir. 2015) (internal citations and quotations omitted).

In the balancing of these factors, the Court finds that the lack of prejudice, while not dispositive by itself, is fatal to Defendant's motion. Here, the first factor, length of delay, was presumptively prejudicial because the delay was over one year, which weighs in Defendant's favor. The second factor, reason for delay, was the result of the nationwide coronavirus pandemic and time granted to multiple counsel for Defendant to review the evidence and mount a vigorous defense. This factor weighs against the Defendant. The third factor, assertion of speedy trial right, weighs against the Defendant because although Defendant asserted his speedy trial rights several times, his actions indicated otherwise. Finally, the prejudice factor weighs against Defendant because he did not carry the burden to demonstrate that the delay prejudiced his case. Notwithstanding the fact that he has been detained during the COVID-19 pandemic and faced anxiety and frustration, the Court is unable to find that Defendant has suffered any specific prejudice in terms of impairment of his defense. In sum, no violation of Defendant's Sixth Amendment speedy trial guarantee occurred.

## II. <u>Speedy Trial Act.</u>

The Speedy Trial Act serves to "protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings." *See United States v. Saltzman*, 984 F.2d 1087, 1090 (10th Cir. 1993). The Act provides, in part, that a defendant's trial "shall commence within seventy [70] days from the filing date of the…indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). If the Government fails to comply with this time limit, the charges in the complaint must be dismissed,

with or without prejudice. *See id.* at § 3162(a)(1).  Generally, however, a state arrest does not

trigger the Speedy Trial Act's clock, "even if the arrest is for conduct that is the basis of a

subsequent indictment for a federal offense."  *See Allen*, 986 F.2d at 1356 (quoting *United States*

*v. Mills,* 964 F.2d 1186, 1189–90 (D.C. Cir. 1992)); *see also United States v. Asfour*, 717 F. App'x

822, 825 (10th Cir. 2017).

The Act also includes several tolling provisions.  The Act provides that certain periods of

delay "shall be excluded in computing the time…within which the trial of any such offense must

commence."  18 U.S.C. § 3161(h).  Enumerated events which are excluded from the Speedy Trial

Act's prescribed 70-day period, thus tolling the speedy trial clock include, but are not limited to:

- "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," *id.* § 3161(h)(1)(D);

- "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court," *id.* § 3161(h)(1)(H); and

- "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," *id.* § 3161(h)(7)(A), commonly known as an "ends-of-justice continuance."

"[T]hese subsections work in concert such that if a motion is one that does not require a hearing,

the Act excludes time through the period of its prompt disposition, but only if that period does not

exceed thirty days from the date the motion is taken under advisement."  *See Margheim*, 770 F.3d

at 1318 (quoting *United States v. Williams*, 511 F.3d 1044, 1048 (10th Cir. 2007).

Federal Rule of Criminal Procedure 45 governs the computation of time under the Speedy

Trial Act.  Generally, for counting purposes, the day on which the speedy trial clock begins to run

is **day zero**.[2]  *See* Fed. R. Crim. P. 45(a)(1); *see also Zedner v. United States*, 547 U.S. 489, 495

(2006) (calculating 91 days between January 31, 1997 status conference granting defendant's

motion to continue and defendant's next court appearance on May 2, 1997).

Defendant argues that the United States has exceeded the 70-day limit here.  Defendant

initially argued that 63 non-excludable days had passed, *see* **Doc. 116, at 20**, but now asserts that

his "federal detainer 'kicked in' on September 24, 2020," and therefore, 69 days passed between

that date and the first ends-of-justice continuance.  *See* **Doc. 142, at 1–2**.  Defendant then submits

that (1) the six-day period between the dismissal of his state court case and his initial appearance

in federal court and (2) the nine-day period where Defendant was purportedly without counsel,

whether independently or together, result in a minimum of 72 days of non-excludable delays in

this case.  *See* **Doc. 116, at 19–21**; *see also* **Doc. 142, at 2** (The "non-[excludable] delays in this

case far exceed the 70 days threshold set out in the Act by at least a factor of three.").  The Court

addresses each argument below.

### A. The Time Period Prior to Defendant's Appearance in Federal Court is not Material to the Speedy Trial Act Analysis.

First, Defendant argues that the six day[3] period between the dismissal of his state court

case on September 24, 2020 and his first appearance in federal court on September 29, 2020 should

---

[2] Delays resulting from pretrial motions are calculated differently.  For motions that are filed and remain pending, the Court must count the day the motion was filed as **day one** because this is provided for under the Speedy Trial Act, which excludes the period "from the filing of the motion through the conclusion of the hearing on."  *See* 18 U.S.C. § 3161(h)(1)(D); *see, e.g.*, *United States v. Williams*, 511 F.3d 1044, 1050 n.5 (10th Cir. 2007) ("We nonetheless assume in our calculations that the excludable period 'from the filing of the motion through the conclusion…of such motion' includes both the date of resolution of any pretrial motion and the date of filing."); *United States v. Bell*, 925 F.3d 362, 374 n.1 (7th Cir. 2019) ("For continuances, Rule 45(a) and the Supreme Court count from the day after the case is continued to the date of the next appearance…For motions that are filed and remain pending, the Supreme Court and the Seventh Circuit count from and including the date the motion was filed through and including the date it was resolved."); *United States v. Flores*, No. 19-CR-522-WJM, 2021 WL 1521309, at *5 n. 3 (D. Colo. Apr. 16, 2021) ("In other words, a motion that falls under subparagraph (D) [of 18 U.S.C. § 3161(h)] will toll the Speedy Trial clock for at least one day, even if resolved the same day.").

[3] The Government argues that there are five days between this period, not six.  *See* **Doc. 138, at 12**.  The Court recognizes that Defendant likely calculates six days between September 24, 2020 and September 29, 2020 by

count towards the period of non-excludable delays.  *See* **Doc. 116, at 20**.  If so, Defendant argues

that 69 days of non-excludable delays have passed, based on his initial calculation of 63 days of

non-excludable delays.  ***Id.***

      The Court finds that Defendant's argument is not supported by the plain text of the Speedy

Trial Act which provides that trial must commence within 70 days from the date of the "indictment,

or from the date the defendant has appeared."  *See* 18 U.S.C. § 3161(c)(1); *United States v. Kalady*,

941 F.2d 1090, 1094 (10th Cir. 1991) ("Under the plain language of the Speedy Trial Act, the

seventy-day period therefore began to elapse on the 'last occur [ing]'date.").  Regardless of when

Defendant's federal detainer "kicked in," the appropriate measure of time is the date from the

federal indictment or Defendant's first appearance, whichever occurred last.  *See Kalady*, 941 F.2d

at 1094; *see also United States v. Taylor*, 814 F.2d 172, 174–75 (5th Cir. 1987) ("The Speedy Trial

Act does not begin to run when the defendant is arrested by state authorities on state charges, nor

does it begin when a federal detainer is lodged with state authorities…Instead, only a federal arrest

triggers the start of the time limits set in the Act.").

      A federal grand jury returned an indictment in Defendant's case on September 10, 2020.

*See* **Doc. 116, at 4**; **Doc. 138, at 17 n.5**.  Defendant made his initial appearance in federal court on

September 29, 2020.  *See* **Doc. 116, at 4**; **Doc. 138, at 3**.  Thus, the statutory clock began to run

on September 29, 2020, the date of Defendant's initial appearance in federal court.  The Speedy

Trial Act "directs [the Court] to consider the time period *following* that date in determining whether

a violation has occurred," and where Defendant asserts the 70-day period "was exceeded *before*

that date…[such a] grievance is simply not addressed by § 3161."  *See Kalady*, 941 F.2d at 1094

(emphasis in original).  Therefore, the Court concludes that the six-day period between the

---

"count[ing] ever[y] day between the beginning act which starts the clock and the end act which stops the clock, including those events."  *See* **Doc. 142, at 2 n.1**.

dismissal of Defendant's state court case and his initial appearance in federal court is appropriately excluded from any Speedy Trial Act calculation to determine when trial must commence.

In support of his claim that the Speedy Trial Act requires consideration of the time period prior to Defendant's initial appearance, Defendant points to *United States v. Seltzer*, 595 F.3d 1170, 1181–82 (10th Cir. 2010). Defendant's reliance on *Seltzer* is misplaced. *Seltzer* supports the conclusion that a court may find prejudice under a Sixth Amendment speedy trial analysis where a delay in a defendant's initial appearance "deprive[s] him of a chance to invoke his statutory rights under the Speedy Trial Act at an earlier date." *Id.* at 1180–81. The Court's Sixth Amendment and Speedy Trial Act analyses are independent, and *Seltzer* does not stand for the position that the Speedy Trial Act's clock begins running during the period referenced by Defendant. Thus, the Court can find no basis to conclude the time period from September 24 to September 29, 2020, prior to Defendant's initial appearance in federal court, is material to the Speedy Trial Act analysis.

Now, using the date of Defendant's initial appearance as a point of reference, *see* 18 U.S.C. § 3161(c)(1), or day zero, the Speedy Trial clock began running on September 30, 2020 and stopped running on November 30, 2020 when the Court entered the first ends-of-justice continuance. *See, e.g.*, *United States v. Gonzales*, 137 F.3d 1431, 1434 (10th Cir. 1998) ("Gonzales was reindicted on November 30, 1995, but did not make his initial appearance until May 21, 1996. The clock began to run on May 22, 1996, and did not stop until June 28, 1996, when he filed a motion in limine and a request for admissions."). There were no intervening acts or motions filed during this time period. Therefore, the Court calculates 62 non-excludable days that passed between Defendant's initial appearance and the first ends-of-justice continuance. Although Defendant asserts that it is "non sensical" to "exclude[e] the day of the initial

appearance," *see* **Doc. 142, at 2 n.1**, such a practice is supported by the text of Federal Rule of

Criminal Procedure 45(a), the Speedy Trial Act, and case law. *See, e.g.*, *Zedner*, 547 U.S. at 495;

*Gonzales*, 137 F.3d at 1434.

### B. The Time Between June 8 and June 17, 2021 was Tolled Under the Speedy Trial Act.

Next, Defendant argues that the nine-day period between when Judge Ritter stated that

counsel would be appointed for Defendant, June 8, 2021, and when counsel was actually appointed

for Defendant, June 17, 2021, should count towards the period of non-excludable delays. **Doc.**

**116, at 20–21**. Defendant asserts that the Government has conceded that Defendant was

unrepresented during this period.[4] *Id.* **at 21**. According to Defendant, if this nine-day period is

counted, this results in 72 days of non-excludable delays in the case, using Defendant's 63-day

calculation. *Id.* Therefore, Defendant argues, the Government has exceeded its 70-day time period

and the case must be dismissed. *Id.* The Court rejects Defendant's arguments.

First, the record does not reflect that Defendant was unrepresented during that nine-day

period. Rather, Judge Ritter allowed Defendant to seek his own private counsel, and Mr. Bowles'

representation was not terminated until June 17, 2021 when Judge Ritter appointed replacement

counsel. *See* **Doc. 74** (no-text order). However, the Court will assume, for the sake of this motion,

that Defendant was unrepresented between June 8 and June 17, 2021. Defendant points to no

authority to support his contention that his lack of representation runs against the Act's clock.

Nevertheless, here, Defendant's lack of representation would not run against the clock because

there was an underlying ends-of-justice continuance to allow the parties to continue plea

---

[4] The Government maintains that Defendant was not unrepresented because Mr. Bowles' representation of Defendant was not terminated until June 17, 2021, contrary to the Government's previous, "erroneous[]" concession on this point. *See* **Doc. 138, at 13–14 n.4**.

negotiations and review discovery, filed by jointly by Defendant and his co-defendant, entered by the Court on March 1, 2021, and which continued trial until July 12, 2021. *See* **Doc. 57, at 2**.

Defendant appears to argue that Defendant did not consent to his counsel, Mr. Bowles, joining in the motion to continue filed by his co-defendant. *See* **Doc. 116, at 5**. Yet, even if Defendant did in fact oppose the motion, "the Act permits courts to grant continuances 'at the request of the defendant *or his counsel*." *See Margheim*, 770 F.3d at 1319 n.3 (emphasis in original) (quoting 18 U.S.C. § 3161(h)(7)(A)). "The Supreme Court's guidance on trial management indicates that this provision does not require the defendant's personal acquiescence [and therefore,] whether an ends-of-justice motion has tolling effect depends on whether the court made the necessary findings, *not* whether the defendant gave his blessing to the continuance." *Id.* (emphasis in original) (internal citations omitted); *see also United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019) ("A trial may be continued and time excluded over the defendant's objection, as long as the district court supplies proper reasoning on the record.").

Here, as stated in the Court's order, the Court concludes that the March 1, 2021 continuance was justified because "plea negotiations have been broached and are proceeding, but have not been concluded," the parties were in the process of "obtaining discovery, conducting an investigation into the basis for the charges against them, and evaluating the discovery that has been provided to date," and additional time was necessary to allow counsel for Defendant to review the evidence, make a "full and adequate assessment" of the case, and "mount a defense to the charges." *See* **Doc. 57, at 1–2**. Thus, even if Defendant was allegedly unrepresented from June 8 to June 17, 2021, the Speedy Trial Act's clock was tolled during this period.

In sum, the Court summarizes as follows. Between September 29, 2020, when Defendant first appeared in federal court, to September 30, 2021, when Defendant filed this instant motion

for dismissal of the indictment, 366 calendar days had passed.  At least 296 of those days must be tolled or Defendant did not go to trial within 70 Speedy Trial Days.  The Court finds that 305 days were tolled.

The speedy trial clock ran for 62 days, from Defendant's initial appearance on September 29, 2020 until November 30, 2020, when the Court entered the first ends-of-justice continuance to postpone the trial.  Two additional ends-of-justice continuances were entered *sua sponte* by the Court, followed by two continuances granted by the Court at the request of the parties—one continuance by the co-defendant and joined by Defendant, requesting time for the parties to review the evidence and mount a defense, and another filed by Defendant, requesting time for counsel to review recently received discovery and meet and confer with Defendant.  Because these ends-of-justice continuances were adequately supported by the record, the 304-day period from November 30, 2020, through September 30, 2021, is excludable under 18 U.S.C. § 3161(h)(7)(A).  Overlapping with the final continuance in this matter, the period from September 30, 2021 to the present day is excludable under § 3161(h)(1)(D) due to pending motions filed by Defendant and the United States, including this motion, in anticipation of trial.  Thus, the Government correctly argues that only 62 days elapsed under the Speedy Trial Act, and Defendant's speedy trial clock has been tolled since November 30, 2020.

## CONCLUSION

For these reasons, the Court finds that there was no violation of Defendant's statutory or constitutional speedy trial rights.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss **(Doc. 116)** is hereby **DENIED WITHOUT PREJUDICE**.

KEA W. RIGGS
UNITED STATES DISTRICT JUDGE